Lessee of JAMES BUCHANNAN *against* JOHN SHEFFFR and ARCH-
IBALD M'ALISTER, landlord.

Devise " of real estate to a daughter, her heirs and assigns forever, but if she shall die with-
out issue, the executor to sell the lands, and after the decease of the widow divide the
sale equally among the testator's nephew."
The daughter marries, has issue which dies; the husband surviving her shall be tenant
by the curtesy.
*Qu.* Whether the remainder over to the nephews is good by way of executory devise.

THIS ejectment for lands in Dauphin county, came on for trial on
the 13th October 1796, before Yeates and Smith Justices, at Har-
risburgh; when the jury found a special verdict to the following
effect. That Hugh Hayes, then deceased, was in his life-time
seized of the premises in question, and on the 24th May 1777, made
his will, whereby, *inter alia*, he "bequeaths to his dear daughter Mar-
garet all the residue of my personal estate, (having before given
several pecuniary and other legacies) and the whole of my real
estate, to her, her heirs and assigns forever. And if it please God that
my daughter should die without issue, my whole estate shall be
sold by my executors, and I direct that the money arising from the
said sale shall after the decease of my dear widow, my said execu-
tors being satisfied for their trouble, be equally divided among my
brother Patrick's and my sisters Buchannan's and Morrison's sons,
share and share alike," and thereof appointed executors. They
further find that James Buchannan, the lessor of the plaintiff, is the
only son of Rebecca Buchannan, who was one of the sisters of Hugh
Hayes; and that the said James, by virtue of sundry good conveyances
in the law duly executed, and so admitted to be by counsel on both
sides, was entitled at the time of bringing this suit, and now is, to
whatever interest, the sons of Patrick Hayes, the brother of Hugh
Hayes aforesaid, and the sons of ——— Morrison, his sisters, are
entitled to under the will of the same Hugh.

They also find, that the said Margaret Hayes intermarried with
the aforesaid Archibald M'Alister, and had issue born alive who died
in the life-time of the same Margaret; and that they the said Archi-
bald and Margaret, were seized of the premises in the life-time of the
said Margaret; that the said Margaret is since dead, leaving no issue,
and the said Archibald is still living. But whether, &c. the jury, &c.

Mr. Ingersoll for the plaintiff, contended, that the intention of a
testator, fairly collected from the words of his will, must govern in
all questions of this nature. The technical meaning of words in a
will, shall give way to manifest intent. 1 Term Rep. 596. And
judging by this criterion, it is hoped, that the nephews of the tes-
tator may well entitle themselves to the premises, the remainder
over to them being good by way of executory devise.

The expressions, "dying without issue," have two senses, a vulgar and legal one; in the former, they mean dying without issue at the time of the party's death; in the latter, they mean an indefinite failure of issue to all generations. In the principle case, three circumstances are united, to show that the meaning of the testator was, that the words he has made use of should be confined to their vulgar or common and general acceptation.

1st, The real estate is given to the daughter, her heirs and assigns forever. 2d, A power is given to the executors to sell after the decease of the widow, as if contemplating the death of his daughter as a determination of the event, whether she died without issue then living; and 3d, The remainder over being limited to the sons of his brothers and sisters, in expectation of their taking the property on the death of the daughter.

Two of these reasons are assigned by Ld. Kenyon as part of the grounds of determination in Porter v. Bradley, that the remainder of the six daughters should be held good, by way of executory devise. It is true, the words "leaving no issue behind him," were attached to the first estate, *prima facie* limited to Philip Dobin in fee, and were said to bring it within Pells v. Brown, Cro. Jac. 590, which is the foundation, and as it were the *magna charta* of this branch of the law. 3 Term Rep. 145, 146. But the authority here granted to the executors looked forward merely to the deaths of the daughter and widow then in *esse*, and their power to sell could never be thought to depend on the indefinite failure of issue in the daughter. The expressions are variant, but equipollent to those in Pells v. Brown; "if Thomas died without issue, living William his brother," and to Porter v. Bradley "leaving no issue behind him." The rule of construction in wills is, that no precise form of words is necessary to convey the testator's meaning. 2 Burr. 770, 771, 1106, 1113. Even the same words in a will have been taken in two different senses as applied to real and personal estate, where it has been necessary to answer the testator's intention. 2 Fearne. (4th edit.)195. 1 Wms. 667. The words, "in default of such issue," may operate as a *descriptio personæ*, applied to real estates, where such interpretation favors the general intention of the divisor, and its application is equivocal, for then it shall be construed by relation to mean issue of the nature intended; as in Doe v. Perryn, Doug. 484, where such words were referred to "children" and not to "heirs" named in the will, and meant the same as "for default of such children," on the clear intent of the devisor, that the children of D, if any, should take a fee. 2 Fearne. 212, 215. A devise of real and personal estate to the wife for life,

remainder to the testator's son R, and his issue lawfully begotten, to be divided as he shall think fit, and if he should die without issue, remainder over, was held to be an estate for life only with the power, and the remainder over good. 3 Bro. Cha. Rep. 82.

M'Alister, one of the defendants, claims the land as tenant by the curtesy; but his wife was not seized of such an estate in the premises as would entitle him to claim in this mode. A condition was annexed to her title, whereby her estate became defeated on her dying without issue. The definition of curtesy by Littleton, (sect. 52) is, when a man taketh a wife seized of such an estate of inheritance, &c. as the issue which he hath by his wife, may by possibility inherit the same tenements of such an estate as the wife hath, as the heir to the wife, he shall after the decease of the wife, have the same tenements by the curtesy of England, but otherwise not. Co. Lit. 40. a. 8 Co. 34. b. Wherever the estate is to be determined by express limitation or condition upon the death of the wife, there the husband shall not be tenant by the curtesy. 9 Mod. 150.

Messrs. Duncan and C. Smith for the defendants, insisted, that the remainder over to the sons of the brother and sisters of the testator was too remote to take effect as an executory devise. There are no expressions to control " the dying without issue," to issue " at the time of the death " of Margaret. All the cases show that a limitation over after such general words is too remote; and no authority can be adduced to prove, that on a limitation of lands on a dying without issue, such words have been confined to issue, living at the time of the death. Cowp. 411. Doug. 485. 3 Term Rep. 494.

A difference of construction of the terms " dying without issue," as applied to real and personal estate, has been laid down in many cases. It has been asserted by Lord Keeper Harcourt, in 1 Wms. 198, by Lord Chancellor Parker, Ib. 433, 664, by Lord Chancellor Hardwicke, in 3 Atky. 283. 2 Vez. 125, 180, 606, by Lord Mansfield, in Cowp. 411, Doug, 486, and by Buller, J. in 3 Term Rep. 494. It is true, Lord Kenyon denied the distinction in 3 Term Rep. 146, but he afterwards recognized it in 6 Term Rep. 313, 314. So of Lord Chancellor Thurlow, in 1 Bro. Cha. Rep. 170, 190. But even as to personalty and executory devises of terms for years, though courts of equity have been much inclined to lay hold of any words in the will, to tie up the generality of the expression of dying without issue, and to confine it to dying without issue living at the time of the person's death, yet they have not allowed this inclination to prevail, without some restrictive circum-

stance in the limitation. 2 Fonbla. 326, and the cases there cited. In Beauclerc *v.* Dormer, 2 Atky. 808, a will runs thus ; " I make D. my sole heir and executrix, and if she dies without issue, then to G. B," the limitation over was held void.

The limitation of personal property by will, on an indefinite failure of issue is too remote. 1 Burr. 268. 6 Bro. Parl. Cas. 429, 450. 1 Bro. Cha. Rep. 170, 188. 2 Bro. Cha. Rep. 33.

Where there is a fee mounted on a fee, the secondary fee must be expressly limited to take effect within the compass of a life or lives in *esse,* and twenty-one years after, otherwise it will be a perpetuity. Saunders on Uses, 193, 194. Pow. on Dev. 254.

The words made use of in the present will are not as strong as in Daintry *v.* Daintry et al. 6 Term Rep. 307. There the testator, after giving different annuities to an only son, increasing at different ages till thirty, and to be paid to him until he married, devised thus , " In case my son shall happen to marry before he attains the age of thirty, then I give and devise to him and the heirs of his body all my real and personal estates, &c. and if my son shall happen to die without leaving issue of his body, then I give and devise the same to my brother B ;" and it was held that the son took an estate tail in the real estates, and the personal estate absolutely, though Lord Kenyon was at first of a different opinion as to the personalty.

As to the exceptions taken to the defendant's tenure, they seem without foundation. All the ingredients necessary to the formation of an estate by the curtesy exist here. The seisin of the wife, marriage, inheritable issue of the wife's estate, and her death, are all found by the special verdict, and unite every circumstance necessary according to the description in Co. Lit. 29, 30. The words " dying without issue," do not form a condition, but rather a limitation of the estate. An estate tail special is spent and determined by the feme's dying without issue, and yet the baron shall have curtesy. 1 Leon. 167. But an express case in point has been adjudged, and is to be found in Collectanea Juridica, 332, Buckworth *v.* Thiskell. That was a devise " to a grand-daughter in fee, and if she died before 21, without leaving issue, limitation over." She had issue which died, and she died before 21. It was held to be a contingent and not a conditional limitation, and that the right of the husband to be tenant by the curtesy was not defeated, though the estate was spent.

The defendant's counsel cited other cases :—3 Atky. 283. 1 Wms. 364. Ambl. 122. 2 Term Rep. 720. 1 Fearne. 357, 358, 361, 368, 371. Pow. on Dev. 252. See Hargrave's remarks on the

case of Buckworth *v.* Thiskell, in Co. Lit. 241, *a. b.* 242, *a.* (note 4.)

The court gave no opinion, whether the remainder over to the testator's nephews was good, or too remote, but said the case last cited was much like the present. They clearly thought, that the husband was tenant by the curtesy. The wife was seized of an inheritance during her life, which her issue by possibility might inherit, and which they would have inherited, if they had not been disappointed by death.

Judgment for the defendants, *per tot. cur.*

---

Lessee of TIMOTHY GREEN et al. *against* ANDREW CREAMER et al.

Devise of an improvement in 1745, without words of inheritance, will vest the devisee with all the testator's interest in the lands.

CASE stated for the opinion of the court, on an ejectment for lands in Dauphin county.

James Graham the elder died seized in fee simple, by virtue of a warrant from the late proprietaries of Pennsylvania, of the premises in question.

. The said James duly made his will, whereby he devised and bequeathed as follows : " As to my worldly concerns and effects, I give to my dear wife the one-third part of all my effects, the improvement only excepted. Also, I give to my son James this improvement whereon I live, with a third part of all moveables. Also, I give to my son John M'Clure, ten shillings, to be paid off the whole ; and to Patrick Brown ten shillings, to be paid off the whole. Also, to Hugh Sample, I allow what he owes to me ; and to Samuel Graham, I give three sheep. Also, I will that M. Sankey and Patrick Watson be executors of this my last will, hereby revoking all former wills by me made. Witness my hand this eighth day of October 1745.          JAMES GRAHAM.
"Witnesses present, Richard Sankey.    John M'Clure."
Which said will was afterwards proved on the 13th day of November 1745, in the register's office of Lancaster county.

James Graham, the testator's son, survived his father ; and by his will duly executed, devised the premises in question to the desendants, or those under whom they claim, in fee simple, and died before the day of the demise in the declaration in this cause.