## EVANS v. EVANS.

A widow is dowable of a fee simple, determinable by executory devise on her husband dying without issue living at the time of his death.

The common law courts have jurisdiction in dower by a widow of a tenant in common dying seised of a fee simple in parcel of the lands, and of a fee simple determinable by executory devise in another parcel.

IN error from the District Court of Allegheny.

Evans devised his lands equally to his sons George and Oliver, and his wife Sarah. Sarah devised to her two sons George and Oliver, "and to their heirs and assigns, share and share alike; but, should either of my two sons die without leaving lawful issue living at the time of his death, then the estate of such son, so dying without issue, shall vest in the surviving brother and his heirs for ever."

Oliver died without issue, and his widow brought dower for the lands devised to her husband by his father and mother.

The court was of opinion that the action at law was proper, and that she could recover (a).

*Loomis,* for plaintiff in error, cited 3 Barr, 60; Co. Litt. 202 b, n. 2; Park on Dower, 181; 3 Preston on Abs. 373; 1 Cruise, § 165, § 166, § 186; 4 Kent, 270–3; Co. Litt. 241 a, n. 4; 4 Kent, 149; Prest. Est. 445.

*Dunlop* and *Williams,* contrà, cited Prest. Abs. 372; Co. Litt. 202 b, n. 2; 4 Kent, 49–50; 3 B. & P. 652, n.; 2 Bl. 154–5; Park, 153; 9 C. L. 475; 2 Bing. 447.

*Oct.* 2. GIBSON, C. J.—Notwithstanding what the conveyancers and text-writers have said about the difficulty presented to us, not one of them has hinted at the true solution of it, except Mr. Preston. All agree that where the husband's fee is determined by recovery, condition, or *collateral* limitation, the wife's dower determines with it. But why a collateral limitation, rather than by any other limitation of the estate, which extinguishes the husband's fee, of which the dower is but an appendage? I have a deferential respect for the opinions of Mr. Butler, who was, perhaps, the best conveyancer of his day; but I cannot apprehend the reason of his distinction in the note to Co. Litt. 241 a, between a fee limited to continue to a particular period at its creation, which curtesy or dower may survive, and the devise of a fee simple, or a fee tail absolute or conditional, which, by subsequent words, is made determinable upon some particular event, at the happening of which, curtesy or dower will also cease. In Doe *v.* Hutton, Lord Alvanly spoke doubtingly of it; and, without absolutely dissenting from it, refused to give it his approbation. The system of estates at the common law is a complicated and an artificial one; but still it is a system complete in all its parts, and consistent with technical reason. But how to reconcile to any system of reason, technical or natural, the existence of a derivative estate, after the extinction of that from which it was derived, was for him to show; and he has not done it. He drew his instances from statutory estates, whose limitations have been

(a) The devise in this case, it would seem, passed a fee simple, with an executory devise over: Langley *v.* Heald, 7 W. & S. 96.

moulded more benignly; and though he affirms that a wife might have been endowed of an extinct conditional fee before the statute *de donis*, he gives no precedent for it.    The case of a tenant in tail, says Mr. Preston in his Abstracts of Title, vol. 3, 372, "is an exception arising from an equitable construction of the statute *de donis;* and the cases of dower of estates determinable by executory devise and springing use, owe their existence to the circumstance that these limitations ARE NOT GOVERNED BY COMMON-LAW PRINCIPLES."    The mounting of a fee on a fee by executory devise, is proof of that.    This very satisfactory solution of the doubt was glanced at, but not developed, in Buckworth *v.* Thirkell. Before the statute of wills, there was no executory devise; and before the statute of uses, there was no springing use.    Like estates tail, which were created by the statute *de donis,* and of which there is constantly dower, though tenant in tail claims *per formam doni,* it was the benign temper of the judges who moulded the limitations of the estates introduced by them, whether original or derivative, so as to relax the severer principles of the common law; and, among other things, to preserve curtesy and dower from being barred by determinations of the original estate, which could not be prevented.    Sammes and Paynes' case, 1 Leo, 167, is an example of this temper, in the case of a springing use.    A mother covenanted to stand seised to the use of her elder daughter, on condition that she would pay 100*l.* to her other daughter, within a year after she should attain the age of eighteen; and if the elder should fail in payment, or die without issue before the day of payment, then to the use of the other daughter in tail.    The mother died; the elder took husband, had issue, and died without issue before the day of payment; and it was adjudged that the husband should be tenant by the curtesy.    Flavell *v.* Ventrice, 1 Roll. Abr. 676, was also the case of a springing use; in which, however, the court was divided.    That two of the judges had not embraced the new faith at that day, is not surprising; but that Lord Eldon should have inclined to think as he did, in Maundrell *v.* Maundrell, 10 Ves. 263, that a husband might bar his wife's dower by executing a power of appointment, is more remarkable.    He was still groping after a fancied distinction between a collateral limitation and a limitation of the estate; which, if it exists, has nothing to do with an estate conveyed to uses.    It may be safely said, that Buckworth *v.* Thirkell, Goodenough *v.* Goodenough, and Moody *v.* King, had a solid foundation in the interpretation of the statutes which sustained the estate from which the curtesy or dower was

derived. Lord Alvanly is reported to have said, in Doe v. Hutton, 3 B. & P. 653, that Buckworth v. Thirkell made a good deal of noise in the profession at the time it was decided—a remark which was properly disposed of by Chief Justice Best, in Moody v. King. "Whatever conveyancers might have thought of the case," said he, "when it was first decided, they have since considered it as having settled the law; and it would be productive of much confusion if we were to unsettle it again." Including the decision then made, we have three cases in point, without an antagonist case in all the books; and if to overturn them for the sake of a technical principle would have bred much confusion then, it would breed more confusion now. The English courts have gone upon a liberal principle; and we are bound to follow them.

Judgment affirmed.